IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 06-02-02 |
| RONALD AUSTIN | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

On September 6, 2005, defendant Ronald Austin, was caught by Philadelphia police officers in possession of a loaded firearm and with three kilograms of cocaine. Defendant Austin pled guilty, pursuant to a plea agreement, on the fourth day of his jury trial, to three counts of the Indictment: (i) conspiracy to possess with intent to distribute 500 grams or more of cocaine (Count One); (ii) possession with intent to distribute 500 grams or more of cocaine (Count Two); and (iii) possession with intent to distribute 500 grams or more of cocaine in a school zone (Count Three). The government agrees to dismiss the firearms related charges, those being 18 U.S.C. § 922(g) (felon in possession of a firearm) and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of drug trafficking) at the time of sentencing. Defendant Austin, a two-time convicted felon, has spent over seven years in prison, yet, as demonstrated by this instant offense, showed a total disregard for the law.

Pursuant to United States v. Cooper, 437 F.3d 324, 330 (3d Cir. 2006), this Court must calculate the advisory guideline range, and then consider that range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at

sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Id. at 329. See also United States v. Schweitzer, 2006 WL 1889986, at *8 (3d Cir. July 11, 2006) (directing district courts to explain all guideline determinations and final sentences, stating, "There is simply no substitute for on-the-record discussion and deliberation. It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment."); United States v. King, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006) (district courts "should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review").[1]

The government explains below its view of the proper consideration in this case of the Section 3553(a) factors, which support a sentence at the high end of the guidelines.

**I.      BACKGROUND**

On the last day of his jury trial, the defendant pled guilty to Counts One, Two and Three of the Indictment. During his plea colloquy, the defendant admitted that, on September 6, 2005, he possessed three kilograms of cocaine as well as a loaded semi-automatic gun, which was registered to his co-defendant Syreeta Womack. When Philadelphia police officers approached defendant on this date, Austin fled but was ultimately apprehended. In the plea

---

[1] In United States v. Grier, 449 F.3d 558, 574-75 (3d Cir. 2006), the panel held that the solitary statement, "The Court believes that 100 months is reasonable in view of the considerations of section 3553(a)," was insufficient to explain the district court's reasoning, and remanded for resentencing. This opinion was subsequently vacated and rescheduled for hearing en banc, likely on a separate issue in the case, regarding whether the preponderance standard applies at sentencing to proof of additional uncharged crimes. The holding with respect to the sufficiency of the sentencing explanation appears to represent the view of the Third Circuit, as made clear in the other cases cited above.

agreement, defendant Austin stipulated that the three kilograms of cocaine were possessed in furtherance of criminal activity jointly undertaken by the defendant along with his co-conspirators, defendants David Hall and Syreeta Womack.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is 160 years imprisonment, with a mandatory minimum term of 5 years, a $16,000,000 fine, 8 years supervised release, and a $300 special assessment.

### B. Sentencing Guidelines Calculation

In imposing sentence, the Court must take into account the considerations of sentencing set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established in the Sentencing Guidelines. The Third Circuit has confirmed: "In consideration of the § 3553(a) factors, a trial court must calculate the correct guidelines range applicable to a defendant's particular circumstances." Cooper, 437 F.3d at 330. See also United States v. King, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006) (explaining requirement of guideline determination). This Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision. Id.; see also United States v. Giaquinto, 441 F.3d 195, 196 (3d Cir. 2006) (court may continue to determine by a preponderance of the evidence and consider the defendant's relevant conduct in determining the guideline range). In short, the guideline range should be calculated in the same manner as it was prior to Booker.

> [W]e emphasize that the sentencing courts in this Circuit should continue to follow the requirement to "consider" the Guidelines by calculating a Guidelines sentence as they would have before Booker, including formally ruling on the motions of both parties and stating on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and taking into account this Circuit's pre-Booker caselaw, which continues to have advisory force.

United States v. King, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006).

In this case, as stated in the presentence report (PSR), the correct guideline calculation is as follows. The base offense level under U.S.S.G. § 2D1.1 and § 2D1.2 for an amount of three kilograms of cocaine within a school zone is 30. Two points are added pursuant to U.S.S.G. § 2D1.1(b)(1) because defendant possessed a loaded firearm at the time of the offense. Defendant qualifies for the three-point reduction for timely acceptance of responsibility. Thus, the adjusted base offense level is 29. Defendant Austin has two prior felony convictions yielding a total of 6 criminal history points. Because defendant was on parole at the time of this offense, another two points are added under U.S.S.G. § 4A1.1(d), thus placing him in Criminal History category IV. This yields a guideline range of 121 to 151 months. Pursuant to 21 U.S.C. § 841(b)(1)(B), defendant faces a mandatory minimum sentence of sixty months.

## III. ANALYSIS

### A. The Court Should Sentence Defendant at the High End of the Guideline Range.

The advisory guideline range carries considerable weight even after Booker. As the Third Circuit stated, "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range . . . ." Cooper, 437 F.3d at 331. The Court later noted: "The farther a sentence varies from the advisory guidelines range, the more

compelling the judge's reasons must be." United States v. King, 2006 WL 1889976, at *7 (3d Cir. July 11, 2006), quoting United States v. Jordan, 435 F.3d 693, 696-97 (7th Cir. 2006).

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker. Rather, the final guideline range is the starting point for determining reasonableness for three reasons: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. Congress explicitly created the Sentencing Commission and the guideline system to achieve these ends.

First, the guidelines are much more comprehensive than any other Section 3553(a) factor. Each of the other 3553(a) factors addresses only a single facet of the many issues posed by sentencing. "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a)." United States v. Shelton, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission, quoted in United States v. Peach, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005). In formulating the guidelines, the Commission was required to and has considered all of the Section 3553(a) factors. See 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note.

Second, the guidelines are the product of years of nationwide experience and sustained study. In drafting the original guidelines (which became effective with respect to offenses committed on or after November 1, 1987), the Sentencing Commission canvassed prior

sentencing practice, identifying aggravating and mitigating factors. 28 U.S.C. § 994(m); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987). Since then, the Commission has continued to study district court and appellate sentencing decisions, and has fine-tuned the guidelines to take them into account. U.S.S.G. App. C. Indeed, the <u>Booker</u> Court specifically affirmed that the Commission will continue to study appellate and district court sentencing decisions, and "will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." <u>Booker</u>, 543 U.S. at 263 (Breyer, J.).

The Sentencing Commission's incomparable flow of nationwide information, and its years of concentrated study on this topic, merit strong consideration by judges who are assigned the task of determining appropriate sentences for criminal conduct. <u>United States v. Wilson</u>, 350 F. Supp. 2d 910, 914-25, <u>reaffirmed on denial of reconsideration</u>, 355 F. Supp. 2d 1269, 1271-88 (D. Utah 2005); <u>United States v. Wanning</u>, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005); <u>Peach</u>, 356 F. Supp. 2d at 1020-22.

Third, the correctly calculated guideline range is the only means to evaluate the statutory sentencing goal on which <u>Booker</u> placed so much emphasis: "the need to avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[2] Congress, the Court, and the

---

[2] Every opinion in <u>Booker</u> acknowledged the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible. <u>See, e.g., Booker</u>, 543 U.S. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); <u>id.</u> at 744 (same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); <u>id.</u> at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); <u>id.</u> at 303-04

guidelines all seek to minimize such disparity compared to "all other similar sentences imposed nationwide." United States v. White, 406 F.3d 827, 837 (7th Cir. 2005). The Sentencing Guidelines provide the comprehensive information and guidance about sentencing around the nation that is essential to accomplishing Congress' goal of uniform federal sentencing. "The only way of avoiding gross disparities in sentencing from judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure in all cases. The only standard currently available is the Sentencing Guidelines." Wilson, 350 F. Supp. 2d at 924; Wanning, 354 F. Supp. 2d at 1061-62 ("we have no meaningful substitute for the neutrality, coherence, and equality" that the guidelines provide). Thus, measuring reasonableness in relation to the guideline range serves "to minimize the wide disparity in sentencing across the country for similarly situated defendants that led to the enactment of the Guidelines in the first place." United States v. Paulus, 331 F. Supp. 2d 727, 733 (E.D. Wis. 2005).

       Thus, the Third Circuit in Cooper stated that "'[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country,' and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct." Cooper, 437 F.3d at 331, quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005).[3]

---

(dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

  [3] In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses. A panel of the Third Circuit correctly found "no merit in [the] argument that the District Court should have considered what [the defendant]'s sentence would have been had he been convicted of a similar state-law offense. Booker directs our reasonableness review to the factors set forth under federal law for federal criminal offenses. That a separate sovereign chooses to implement its criminal sentencing scheme in a different

Accordingly, while many appellate courts have reversed as unreasonable sentences imposed outside the applicable guideline ranges,[4] reversals of sentences imposed within the guideline range have been extraordinarily rare, and have occurred only where the appellate court found that the district court did not adequately explain the sentence. See, e.g., United States v. Carty, 2006 WL 1975895, at *4-6 (9th Cir. July 17, 2006). Moreover, the Courts of Appeals have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.[5]

A full review of all pertinent factors supports the conclusion that a sentence at the high end of the guideline range is appropriate in this case.

B.  Application of Section 3553(a) Factors

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors are:

---

manner does not impact our analysis under § 3553(a)(6), which focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law." United States v. Cropper, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

[4] See, e..g, United States v. Zapete-Garcia, 447 F.3d 57 (1st Cir. 2006); United States v. Smith, 445 F.3d 1 (1st Cir. 2006); United States v. Davenport, 445 F.3d 366 (4th Cir. 2006); United States v. Hampton, 441 F.3d 284 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434-37 (4th Cir. 2006); United States v. Duhon, 440 F.3d 711 (5th Cir. 2006); United States v. Goody, 442 F.3d 1132 (8th Cir. 2006); United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006); United States v. McVay, 447 F.3d 1348, 1357 (11th Cir. 2006).

[5] "[T]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005). The Third Circuit cited this view with approval in King. Accord United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines. The other 3553(a) factors also point to this conclusion.

Carrying a loaded gun and possessing three kilograms of cocaine in a residential Philadelphia neighborhood is a serious and dangerous offense. And, this was not the first time defendant Ronald Austin was involved with drugs or carrying a gun. His drug convictions date back to when he was a minor. He also has one adult conviction for robbing a young woman at gunpoint. Aside from convictions, defendant's adult arrest record is equally violent involving three drug-related arrests, as well as a possession of a firearm and attempted murder as recent as 2003. Despite being a convicted felon and thus prohibited from carrying a firearm, as well as on parole for a state sentence, defendant Austin continued to disregard the law by carrying a loaded firearm on September 6, 2005. Also noteworthy, defendant has had no legitimate employment in the years leading up to this offense. Defendant's history supports the need for significant incarceration at the highest end of the guideline range. A sentence at the highest end of the range would not only be reasonable under the law, but it would reflect the severity of the crime, defendant's significant role in the conspiracy, and the need to deter similar conduct from others in the future.

Defendant has not set forth any basis supporting a variance from the guidelines. Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. For all of these reasons, the government respectfully recommends that the Court sentence the defendant at the high end of the guideline range defined above.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

_____
Denise S. Wolf
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I certify that on this day I caused a copy of the Government's Sentencing Memorandum to be served electronically and/or by U.S. mail, postage prepaid, upon:

> Mark Cedrone
> Cedrone & Janove
> Public Ledger Building
> 150 South Independence Mall West
> Suite 940
> Philadelphia, PA 19106

_____
Denise S. Wolf
Assistant United States Attorney

Date: November 15, 2006.